# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

EDDIE JOE OGLESBY, JR.,

    Petitioner,

VS.                            CASE NO. 5:24-cv-323-JA-PRL

                                        (5:21-cr-76-JA-PRL)

UNITED STATES OF AMERICA,

    Respondent.

## ORDER

A grand jury returned an indictment charging Eddie Joe Oglesby with one count of Receiving Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and two counts of Producing or Attempting to Produce Child Pornography in violation of 18 U.S.C. § 2251(a) and (e). (Doc. cr. 81; Doc. cr. 123).[1] The case proceeded to trial, and a jury found Petitioner guilty as charged. The Court sentenced Petitioner to 960 months imprisonment followed by supervised release for life. (Doc. cr. 151). Petitioner appealed, and the Eleventh Circuit Court of Appeals affirmed

---

[1] Citations to the underlying criminal proceeding in Case No. 5:21-cr-76-JA-PRL, will be "Doc. cr." followed by the applicable document number.

the convictions and sentence. (Doc. cr. 202).

Petitioner committed the crimes using the internet to contact and seduce the minor victims, first encouraging—then demanding—that they engage in sexual acts for his gratification. To win his victims' affection, he told them that his name was Gabriel Collins, and that he was a 6'7" genius nineteen-year-old billionaire who was an undercover government agent living in Hawaii. In fact, Petitioner was a middle-age unkempt hermit living in rural Florida.

Now pending before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence filed pursuant to 28 U.S.C. § 2255. (Doc. 1). Petitioner asserts that trial counsel failed to provide him with effective assistance. Petitioner alleges that trial counsel failed: (1) to move for the suppression of statements he made to the investigating FBI agent, (2) to challenge the Marion County Jail's "misclassification" of the charges against him, (3) to locate and call specific witnesses to testify at trial, and (4) to raise the issue of his incompetency to stand trial. Petitioner also faults appellate counsel for failing to raise these issues on appeal.

The Court having thoroughly reviewed and considered the Petition and the Government's Response in Opposition (Doc. 13), determines that

the Petition lacks merit and must be denied.

## II. Legal Standard

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To satisfy the deficient-performance prong, the petitioner must show that counsel made errors so serious that he was not effectively functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. To show that counsel was ineffective, a petitioner must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id.* at 689.

To establish prejudice, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." *Id.* at 693. To make this showing, Petitioner would have to demonstrate more than "some conceivable effect on the outcome of the proceeding." *Id.* Therefore, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## III. Analysis

### A. Claim One

In his first claim, Petitioner complains that trial counsel's assistance was ineffective because counsel failed to seek suppression of statements Petitioner made to the arresting FBI agent. Petitioner alleges that after the agent read him his *Miranda*[2] rights, he told the agent that he did not understand and requested the assistance of a lawyer. He further alleges that the agent ignored his request and proceeded to record an interview of Petitioner.

Petitioner's newly minted claim that he requested a lawyer before the interview began is belied by the record. Trial counsel attests that Petitioner never stated that he did not understand his *Miranda* rights. (Doc. 13-2 at 1–2). Nor did Petitioner tell counsel that he had requested a lawyer before he was asked questions by the agent. (*Id.*). The agent asked Petitioner about his relationship with the fictitious Gabriel Collins and Petitioner's use and disposal of his computer. (Doc. cr. 184 at 111, 114,

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

117–21). At trial, Petitioner described the circumstances surrounding his arrest and the contents of the statement he gave to the agent in detail:

> A. We got into his truck. I guess it was his truck. He got in, and then there was two agents that got in in the back. So I was being confronted by three different agents in the truck. He—he started reading—what's that stuff, the rights?
>
> Q. Right.
>
> A. He read me those. He asked me if I understood. And I told him, "Sir, I have mild retardation. I don't"—and before I finished, he goes, "That's a bunch of crap. You know right from wrong."
> And then he—he continued to—then that's when he—he told me what I was charged with.
>
> Q. And in the course of that, he also told you you can go to prison for a long time?
>
> A. Yes, sir. He—he goes—he told me what I was charged with, if I understood it. I told him no. He explained it to me, that—that I—I had received a video of an underage girl doing a sex act. I don't remember the whole conversation of that, but I didn't understand exactly—I told him he had the wrong person, it wasn't me.
>
> Q. All right.
>
> A. And then he says—he goes, "Look, Mr. Oglesby, you can either cooperate with me and be honest with me, and I will help you, or you can deny it, and I'll bury you and make sure you don't never get out."

(Doc. cr. 185 at 84–85). Yet, Petitioner made no mention of a request for a lawyer. And during the Government's rigorous cross-examination, he

5

also did not mention requesting a lawyer. (*Id.* at 89–113, 116–22).

The Government announced its intention to use the recorded interview to question the victims, expecting that they would identify Petitioner's voice as the voice they believed to be that of Gabriel Collins. Trial counsel moved to exclude the recording on hearsay grounds. (Doc. cr. 183 at 99–101). But at trial, counsel later withdrew his hearsay objections, agreeing that the statements contained in the recording were "admissions of a party opponent." (*Id.* at 101). Trial counsel later acknowledged that there is no apparent legal authority to exclude the recording of the interview. (Doc. 13-2 at 2). And Petitioner now fails to provide any legal authority or meritorious argument that trial counsel should have relied on to exclude this evidence.

At trial, the recorded interview was received in evidence. And as expected, multiple witnesses identified Petitioner's voice as being the voice of the person posing as Gabriel Collins. (*See* Doc. cr. 183 at 98–100, 142–43; Doc. cr. 184 at 275–81).

Petitioner also contends that appellate counsel was ineffective for failing to raise the issue of admission of the recording on appeal. It is well-settled that where, as here, a defendant fails to preserve an evidentiary

6

ruling by contemporaneous objection, appellate review is only for plain error. *United States v. Perez–Garcia*, 904 F.2d 1534, 1540 (11th Cir. 1990) ("The lack of a contemporaneous hearsay objection requires this court to review the admission of the testimony under the standard of plain error"). "Consequently, proof of a plain error involves not only a showing of harm, but also proof that the error was so conspicuous that the 'judge and prosecutor were derelict in countenancing it.'" *United States v. Simmons*, 961 F.2d 183, 185 n.1 (11th Cir. 1992) (per curiam) (quoting *United States v. Bonavia*, 927 F.2d 565, 570 (11th Cir. 1991)).

Other than his recent self-serving statement—which is not credible—there is no evidence supporting Petitioner's claim that he invoked his right to an attorney. Thus, Petitioner has failed to establish the first prong of his ineffective assistance of counsel claim—that the performance of counsel was deficient.

Out of caution, the Court will also address the second prong of Petitioner's ineffective assistance claim—had counsels' performance been deficient, would that performance have prejudiced his defense. It would not.

Petitioner cannot establish that the admission of the recording had

an adversely effect on his defense. The recorded statement was consistent with Petitioner's defense at trial. Furthermore, there was overwhelming evidence that established that Petitioner and Gabriel Collins were the same person. The agent testified extensively how forensic data extracted from the cellular phone seized from Petitioner, as well as account and internet access information used by the Gabriel Collins identity, showed that the two identities were the same person—Petitioner. (*See* Doc. cr. 184 at 182–94). And one of the victims positively identified Gabriel Collins as Petitioner because he participated in a video call where he revealed his identity and showed his actual face—that of a fifty-year-old man, not the fictious 19-year-old Gabriel Collins. (Doc. cr. 183 at 220–22).

Petitioner having failed to show that counsel acted deficiently regarding this issue nor that he sustained prejudice, Claim One must be denied.

**B. Claim Two**

Petitioner claims that trial counsel was ineffective for failing to challenge the Marion County Jail's listing of his pending charge. He claims that he suffered character slandering due to "falsifying a charge" related to the Marion County Jail's website showing his charged offense

as "sex trafficking of a child." (Doc. 1 at 5–6). Petitioner brought this issue to the attention of counsel, who he claims did nothing about it.

Defense counsel acknowledge that Petitioner complained about the information on the website, and that they did nothing in response.[3] (Doc. 13-1 ¶ 5; Doc. 13-2 at 2). But this allegation does not constitute a Sixth Amendment violation. And it is unclear how the claim pertains to Petitioner's conviction. Petitioner does not allege—and the record does not reflect—that the jail's characterization of his offenses was ever disclosed to the jury. And even if the characterization was on a website accessible to the public, there is no suggestion that a prospective juror viewed the website. Petitioner has not shown that counsel acted deficiently regarding this claim.

Even if jurors had been made aware of the characterization of the charges, it is inconceivable that it would have resulted in prejudice to Petitioner. Petitioner's conduct in committing the crimes of conviction was cruelly perverse. That conduct included intimidating and threatening vulnerable children to engage in sex acts for his gratification, encouraging

---

[3] An Assistant Federal Defender initially represented Petitioner but moved to withdraw after Petitioner discharged him. (*See* Doc. 13-1 ¶¶ 1–3). Trial counsel was then appointed to represent Petitioner.

children to have sex with men, and deceiving children into producing child pornography and sending it to him. Petitioner then used the produced material to blackmail his victims into engaging in additional sex acts by threatening to disclose their prior behavior, which he said would result in their removal from their parents, incarceration, or death. To the extent this conduct did not constitute "child sex trafficking," it likely appeared no less serious to the jury.

Petitioner has failed to show that either trial counsel or appellate counsel was ineffective in not raising this issue. Thus, Claim Two must be denied.

### C. Claim Three

Petitioner claims trial counsel failed to provide effective assistance because counsel failed to locate two witnesses who would testify that he was not the person who engaged with the victims. (Doc. 1 at 6–7). He further claims that the Government denied defense counsel access to one of the witnesses. (*Id.*). These witnesses, Petitioner claims, would testify that he was not Gabriel Collins. (*Id.*).

One of these witnesses was 17-year-old runaway S.M.[4] Agents found

---

[4] S.M. is the witness Petitioner claims his first counsel was "not allowed to talk to." (Doc. 1 at 6). But successor counsel was appointed approximately eleven months before

S.M. naked inside Petitioner's house when they executed a search warrant. (Doc. cr. 184 at 71–72). In deciding not to call S.M. as a witness, trial counsel reasoned that testimony from "an underage runaway found naked in his [squalid] shack with a dildo" would more likely be harmful than helpful as a defense witness. (Doc. 13-2 at 2).

Courts "will seldom . . . second guess" a defense counsel's strategic decision of which witnesses to call. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (citation omitted). To rebut the presumptive reasonableness of counsel's strategy here, Petitioner must show "that no competent counsel would have taken the [same] action." *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (citations omitted). Petitioner fails to do so.

As for the other witness Petitioner wanted to call, trial counsel states: "I repeatedly asked Mr. Oglesby to give me some identifying information about his witnesses beyond first names . . . I asked for a phone number, Facebook account, last names, the name of some mutual acquaintance. He gave me no leads." (Doc. 13-2 at 2).

---

trial. (*See* Doc. 13-1 at 2–3). Jury selection did not begin until October 7, 2022. (Doc. cr. 108). Petitioner does not claim trial counsel was denied access to this witness.

11

There is no support for Petitioner's bald assertion that witnesses would testify that he was not Gabriel Collins. (Doc. 1 at 6–7). Such speculative arguments fail to persuade. *See McMillan v. Inch*, No. 3:17-cv-876, 2020 WL 8084277, at *11 (N.D. Fla. Oct. 8, 2020), *report and recommendation adopted*, 2021 WL 54214 (N.D. Fla. Jan. 6, 2021) ("[E]vidence about the testimony of a . . . witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." (quoting *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted))).

Petitioner claims that appellate counsel "ignored" this claim and did not raise it on appeal. (Doc. 1 at 7–8). Except in the rare instance when the record is sufficiently developed, the appellate court will not address claims for ineffective assistance of counsel on direct appeal. *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010). An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255. *Id.* Thus, appellate counsel here was not ineffective.

Because Petitioner has failed to show that counsel acted deficiently

or that he suffered prejudice, Claim Three must be denied.

**D. Claim Four**

Petitioner's last claim is that counsel was deficient in not challenging psychological evaluations finding him competent. He maintains that he "is an incompetent man with an average IQ of 51." (Doc. 1 at 9–10). He argues that his IQ was too low for him to be tried criminally.

The record reveals that both lawyers appointed to represent Petitioner were diligent in pursuing an evaluation regarding Petitioner's competency. Petitioner's initial counsel learned that Petitioner had been found incompetent in several prior state cases. (Doc. 13-1 at 1–2). And after Petitioner described Gabriel Collins's alleged involvement in this case, that defense counsel requested that a forensic psychologist evaluate Petitioner's competency to stand trial. (*Id.* at 2). A psychologist was hired, but jail staff blocked her for "not hav[ing] the proper approval to see [Petitioner] for the evaluation." (*Id.*). After counsel told Petitioner that the psychologist was denied access to the jail but would return in a few weeks, Petitioner became "extremely upset and discharged [counsel] as his attorney." (*Id.*).

Approximately one month after being appointed, substitute counsel

filed a motion for psychological evaluation noting that Petitioner had been found incompetent in seven previous state cases and referencing Petitioner's reported low IQ. (Doc. cr. 44). The Court granted the motion, and appointed Harry Krop, Ph.D., to evaluate Petitioner's competency. (Doc. cr. 50). Dr. Krop conducted an evaluation and determined that Petitioner was competent to stand trial. (Doc. cr. 53). Contrary to Petitioner's allegations, the report states that the evaluation took place at the Marion County Jail. (*Id.*). A hearing followed during which trial counsel made an oral motion for a second competency evaluation. (*Id.*) The Court granted the motion. (*Id.*).

The second evaluation was conducted by Carmen Rodriguez, Psy.D., at FDC Miami. (*See* Doc. cr. 63 at 1–2). Although Petitioner argues that Dr. Rodriguez did not evaluate his intelligence, the doctor's report indicates otherwise. The report includes a list of tests she administered, including the Wechsler Adult Intelligence Scale, Cognistat-The Neurobehavioral Cognitive Status Examination, and Evaluation of Competency to Stand Trial-Revised. (Doc. cr. 59 at 2). Additional testing administered by Dr. Rodriguez included the Test for Memory Malingering and the Validity Indicator Profile. Dr. Rodriguez, like Dr. Krop, concluded

that Petitioner was mentally competent. (*Id.*; Doc. cr. 63 at 2). Following a hearing, the Court found Petitioner competent to stand trial. (Doc. cr. 68).

Petitioner now claims that because trial counsel "never sent" Dr. Rodriguez his previous evaluations, Dr. Rodriquez "wrote a false report." (Doc. 1 at 9). In his affidavit, trial counsel responds to Petitioner's statement that he failed to provide Dr. Rodriguez evaluations done in connection with prior state cases, by describing Petitioner's statement as "false." (Doc. 13-2 at 3).

The standard for competency to stand trial is whether a "defendant has sufficient present ability to consult with his lawyer[s] with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him." *United States v. Hogan*, 986 F.2d 1364, 1371 (11th Cir. 1993) (internal quotation marks and citations omitted). A defendant raising a substantive claim of incompetency bears the burden of "demonstrat[ing] his . . . incompetency by a preponderance of the evidence." *United States v. Bradley*, 644 F.3d 1213, 1268 (11th Cir. 2011) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). "[N]either low intelligence, mental deficiency, nor

bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." *Medina*, 59 F.3d at 1107 (citing *McCune v. Estelle*, 534 F.2d 611, 612 (5th Cir. 1976)). Petitioner's professed low IQ does not automatically render him incompetent, and he has failed to present any evidence to rebut the two reports finding him competent.

Petitioner claims that because he was determined incompetent in state court he was entitled to a determination of incompetence in federal court. That argument is contrary to 18 U.S.C. § 4241(d), which requires "the court find[] by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Moreover, that subsection permits a defendant found incompetent to have their competency restored.

There was no issue for appellate counsel to appeal. The Court's determination that Petitioner was competent to stand trial was based on the expert reports of two psychologists, whose qualifications were not in question. Like Petitioner's previous claims, Claim Four is without merit and must be denied.

## IV. Certificate of Appealability

This Court should grant an application for a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, the petitioner need not show that the appeal will succeed. *Miller–El v. Cockrell*, 537 U.S. 322, 337 (2003).

Oglesby fails to demonstrate that reasonable jurists would find this Court's assessment of the constitutional claims debatable or wrong. Moreover, Oglesby cannot show that reasonable jurists would find this Court's procedural rulings debatable. Oglesby fails to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Oglesby a certificate of appealability.

## V. Conclusion

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

    1. The Motion to Vacate, Set Aside, or Correct Sentence

(Doc. 1) is **DENIED**.

  2. This case is **DISMISSED** with prejudice.

  3. Petitioner is **DENIED** a certificate of appealability.

  4. The Clerk of the Court is directed to enter judgment in favor of Respondent and to close this case. A copy of this Order and the judgment shall also be filed in criminal case number 5:21-cr-76-JA-PRL.

  5. The Clerk of the Court is directed to terminate the § 2255 motion (Doc. cr. 204) filed in criminal case number 5:21-cr-76.

**DONE and ORDERED** in Ocala, Florida on July 14, 2025.

            JOHN ANTOON II
            United States District Judge

Copies furnished to:
United States Attorney
Eddie Joe Oglesby, Jr.
David Gerhardt Mengers
Melissa Fussell
Douglas Jordan Stamm
Valarie Linnen